J-A29011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN RE:  R.E.R.B., A MINOR       :   IN THE SUPERIOR COURT OF
                                             :        PENNSYLVANIA
                                             :

APPEAL OF:  D.S., MOTHER        :
                                             :
                                             :
                                             :
                                             :
                                             :
                                             :
                                             :   No. 988 WDA 2024

Appeal from the Order Entered July 16, 2024
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  19 OC 2024

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:            **FILED: FEBRUARY 12, 2025**

      D.S. ("Mother") appeals from the July 16, 2024 order that granted the petition filed by E.M. and A.M., husband and wife ("Custodians"),[1] for the involuntarily termination of Mother's parental rights to her biological daughter, R.E.R.B. ("Child"), born in January of 2023.[2]  Upon careful review, we are constrained to reverse and remand with instructions.

      The certified record reveals the following relevant facts and procedural history.  When Child was born, Mother lived with Father in Forest County, Pennsylvania.  **See** Orphans' Court Opinion, 7/15/2024, at ¶ 2; N.T., 6/3/2024, at 49-50.  In February of 2023, when Child was one month old,

---

[1] E.M. is Mother's legal cousin.  **See** N.T., 6/3/2024, at 12.

[2] By the same order, the orphans' court involuntarily terminated the parental rights of Child's father, T.B. ("Father").  Father did not appeal or participate in Mother's appeal.

Mother left the shared residence with Child after an incident with Father and entered a domestic violence shelter.[3]  **See** Orphans' Court Opinion, 7/15/2024, at ¶ 4; N.T., 6/3/2024, at 41, 49, 51.  Mother was evicted from the shelter in April of 2023.  **See** Orphans' Court Opinion, 7/15/2024, at ¶¶ 6, 8; N.T., 6/3/2024, at 5, 33-34, 42, 49.  Mother entrusted Child's care to Custodians. **See** Orphans' Court Opinion, 7/15/2024, at ¶ 7; N.T., 6/3/2024, at 12, 34.

Shortly thereafter, Custodians filed a complaint for custody wherein they requested sole legal and physical custody of Child.  **See** Orphans' Court Opinion, 7/15/2024, at ¶ 10; **see also** N.T., 6/3/2024, at 5, 23-24.  An evidentiary hearing occurred in June of 2023, during which Mother appeared *pro se* from prison as she was incarcerated after a probation violation involving the use of methamphetamines.[4]  **See** Orphans' Court Opinion, 7/15/2024, at ¶¶ 9-10; N.T., 6/3/2024, at 5, 17, 23-24, 34, 41.  By order dated June 13, 2023, the court awarded Custodians sole legal and physical custody.  **See** Orphans' Court Opinion, 7/15/2024, at ¶ 10, *citing* Custodians Exhibit 1; N.T., 6/3/2024, at 5-6, 14, 24.

---

[3] As best we can discern, Mother obtained a Protection from Abuse ("PFA") order against Father following this incident, which remained in effect at the time of the subject proceeding.  **See** N.T., 6/3/2024, at 46, 62.

[4] The charges from which Mother's probation originated are not clear in the certified record.

Mother had a history of incarcerations and court-ordered rehabilitations during the time Child lived with Custodians. Mother was incarcerated from June 12, 2023, to early July of 2023, due to the previously mentioned methamphetamine use. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 11; N.T., 6/3/2024, at 42. Mother was ordered to Cove Forge rehabilitation facility from early July to mid-August of 2023 and completed the program. *See id.* As best we can discern, as part of her sentence, the court subsequently ordered Mother to attend another program at MVP Recovery, but she was expelled about three weeks later. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 11; N.T., 6/3/2024, at 44. As a result of her expulsion, Mother was reincarcerated in the Clarion County jail beginning in approximately September of 2023. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 11.

On March 7, 2024, Custodians filed the petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). The orphans' court held the evidentiary hearing on June 3, 2024, during which Child was represented by Zachary Shekell, Esquire.[5] Custodians separately testified, and Mother testified on her own behalf.

_____

[5] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020).
*(Footnote Continued Next Page)*

The court found that when Mother was reincarcerated in the Clarion County jail, it was "to serve the balance of her incarceration[,]" and she was released in April of 2024. Orphans' Court Opinion, 7/15/2024, at ¶ 13; N.T., 6/3/2024, at 31. Further, the court found that, upon her release, she attended one rehabilitation program before requesting her current treatment facility, which was a six-month inpatient program for women where their children can reside with them. *See* Orphans' Court Opinion, 7/15/2024, at ¶¶ 13, 18. The court found that Mother "is doing very well in the program[;]" "[had] been clean and sober since June 12, 2023[;]" and was currently attending Alcoholics Anonymous and Narcotics Anonymous meetings. *See id.* at ¶ 18, *citing* Mother's Exhibit A; N.T., 6/3/2024, at 38, 43, 47. At the time of the termination hearing, the court found that Mother "expect[ed] to be successfully discharged" from the program at her treatment facility on October 19, 2024, and was eligible for employment in three weeks, *i.e.*, at the end of

_____

Attorney Shekell was appointed as "counsel" for Child for the termination hearing. *See* Order, 3/28/2024. Insofar as Child was one and a half years old at the time of the proceedings and was incapable of articulating a well-settled preference with respect to termination, we determine that Child's right to legal counsel pursuant to Section 2313(a) is satisfied. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[,]" then the mandate of § 2313(a) "is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.").

June of 2024. *See* Orphans' Court Opinion, 7/15/2024, at ¶¶ 18, 19; N.T., 6/3/2024, at 37, 39.

Mother testified that the program has "twenty-four-seven" monitoring and allows a resident to "have one child under the age of five" live in the facility with them. N.T., 6/3/2024, at 32-33. She further explained that the program is focused on substance use recovery, attending internal meetings every day and further meetings outside the facility. *See id.* at 32. As best we can discern, the program operates on a phase-based progression of treatment that assists residents with parenting education, domestic violence resources, everyday skills like budgeting and grocery shopping, finding employment once they hit "Phase II," and locating post-program housing. *Id.* at 32-33, 45-46. The program would also provide "everything that [Child would] need" until Mother gained employment if Child were to reside with her there. *Id.* at 37.

As mentioned above, pursuant to the June 13, 2023 custody order, Mother was afforded no physical custody of Child as Custodians were awarded sole physical and legal custody. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 10 (citing Custodians Exhibit 1); N.T., 6/3/2024, at 5, 14. The court made factual findings confirming that Mother filed two petitions for partial physical custody of Child. *See* Orphans' Court Opinion, 7/15/2024, at ¶¶ 14, 17; N.T., 6/3/2024, at 14, 25, 28, 40, 44-45, 53. These filings occurred during her period of incarceration from approximately September of 2023 to April of

2024. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 14; N.T., 6/3/2024, at 14, 25, 28, 40, 44-45, 53. Mother filed the first custody petition in October of 2023. *See id*. at 44-45, 53. According to Mother, the court did not hear the petition but directed her to file again when she was released from incarceration. *See id.*; Orphans' Court Opinion, 7/15/2024, at ¶ 14. While she was still incarcerated in February of 2024, Mother filed for partial physical custody again. *See* N.T., 6/3/2024, at 14, 25, 28, 40, 44-45, 53. The court denied Mother's second custody petition following an evidentiary hearing in May of 2024, due to the pendency of the subject termination proceeding. *See id.* at 14, 25, 28, 45, 53; Orphans' Court Opinion, 7/15/2024, at ¶ 17.

Further, the court found that while Mother was incarcerated, she called Custodians several times to inquire about Child and requested Custodians tell Child that she loves her. *See id*. at ¶ 16; N.T., 6/3/2024, at 7, 25, 27, 36. The court also found that Mother sent two letters to Child during the approximately four weeks that she was incarcerated in the summer of 2023, as well as a Christmas and birthday card while she was incarcerated for the entirety of the winter of 2023.[6] *See* Orphans' Court Opinion, 7/15/2024, at ¶ 16, *citing* Mother's Exhibit B; N.T., 6/3/2024, at 7-8, 14, 36.

---

[6] The Christmas and birthday cards sent in the winter of 2023 were returned to Mother because she improperly addressed the cards. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 16 (citing Mother's Exhibit B); N.T., 6/3/2024, at 37.

By opinion and order dated July 15, 2024, and entered July 16, 2024, the court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[7]  On August 14, 2024, Mother timely filed a notice of appeal with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The orphans' court filed its Rule 1925(a) opinion on August 22, 2024, which directed this Court to its contemporaneous opinion from its July 15, 2024 order.

On appeal, Mother raises the following issues for our review:

1. Whether the [orphans'] [c]ourt erred or committed an abuse of discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), when Mother has utilized the available resources to maintain a presence in her daughter's life, and is at a facility where she can care for [Child]?

2. Whether the [orphans'] [c]ourt erred or committed an abuse of discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), where Mother has utilized rehabilitation to remediate prior incapacities, and is at a facility where she can reside and care for [Child]?

3. Whether the [orphans'] [c]ourt erred or committed an abuse of discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 5.[8]

Our standard of review in this context is well-established:

_____

[7] Following the hearing, the court provided all counsel an opportunity to submit briefs.

[8] We note with displeasure that Child's legal counsel did not participate in the instant appeal.  Counsel advocated for termination of Mother's parental rights at the conclusion of the termination hearing.  **See** N.T., 6/3/2024, at 63.

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-830 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *See id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing

- 8 -

evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Further, "we may uphold a termination decision if any proper basis exists for the result reached." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021).

In this case, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (b).

Instantly, we first review the order pursuant to Section 2511(a)(1), which provides that "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" *In re Adoption of C.M.*, 255 A.3d 343, 363-364 (Pa. 2021); *see also* 23 Pa.C.S.A. § 2511(a)(1).

In assessing Section 2511(a)(1), orphans' courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. *C.M.*, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this timeframe is the "**most** critical period" for evaluation of a parent's conduct and "courts **must** address it." *Id.* at 367 (emphasis in original); *see also In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

- 10 -

"When considering a request to terminate parental rights under Section 2511(a)(1), a parent's failure or refusal to perform parental duties 'must be analyzed in relation to the particular circumstances of the case.'" **L.A.K.**, 265 A.3d at 592, *citing* **In re Burns**, 379 A.2d 535, 540 (Pa. 1977). Our Supreme Court has stated:

> Parental duties are not defined in the Adoption Act, but our courts have long interpreted parental duties in relation to the needs of a child, such as love, protection, guidance, and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in a child's life.

**L.A.K.**, 265 A.3d at 592 (internal citations and quotation marks omitted). A finding that a parent has refused or failed to perform parental duties may "only result when a parent has failed to utilize all available resources to preserve the parental relationship." **Id.**

In **In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012), our Supreme Court discussed **In re Adoption of McCray**, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the termination of parental rights of incarcerated persons predicated upon abandonment, as currently codified at Section 2511(a)(1). The **S.P.** Court stated:

> Applying in **McCray** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." **Id.** at 655. We observed that the father's incarceration made his performance of this duty "more difficult." **Id.**

- 11 -

*In re Adoption of S.P.*, 47 A.3d at 828. The *S.P.* Court continued:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. **Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.**
>
> [**McCray**,] 331 A.2d at 655 (footnotes and internal quotation marks omitted).

*In re Adoption of S.P., supra* (emphasis added); *see also In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted) (stating that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child").

Here, the orphans' court found that "[Custodians] have proved by clear and convincing evidence that for a period of six months preceding the filing of the petition [Mother] failed and refused to perform any paternal duties for [Child.]" Orphans' Court Opinion, 7/15/2024, at 8. The court's analysis for Section 2511(a)(1) primarily focuses on Mother's conduct from April to October of 2023, when she was arrested for illegal drug use and repeatedly incarcerated or court-ordered to attend rehabilitation. *See id.* at 8-9. The court reasoned, as follows:

> [B]ecause [Mother] delayed attempting to exert herself and she allowed [Custodians] to perform all parental duties, she forfeited her rights. She waited until after she was incarcerated and placed

in rehab several times before trying to perform her parental duties while [Custodians] provided [Child] with her physical and emotional needs.

*Id.* at 9.[9]  In essence, the orphans' court focused on Mother's repeated incarcerations, rehabilitations, and consequent lack of ability to perform parental duties, prior to the most critical six-month period.

Indeed, Mother argues that during the six months preceding Custodians' termination petition, she exerted "reasonable firmness in declining to yield to obstacles" and "utilized the resources available to maintain a relationship with [Child.]" Mother's Brief at 11-12.  Mother attempted to stay involved in Child's life while incarcerated through use of phone calls, letters, and cards.  *See id.* at 11.  Mother also committed to her sobriety and chose a treatment facility where Child can return to her care while she continues with her treatment. *See id.*  Further, Mother filed two petitions to obtain partial physical custody of Child.  *See id.*  We are persuaded by Mother's arguments.

The orphans' court's factual findings are supported by the certified record, yet its conclusions of law pursuant to Section 2511(a)(1) in light of those sustainable findings are manifestly unreasonable.  There is no dispute

_____

[9] The court's legal analysis for Section 2511(a)(1) includes that "termination of [Mother]'s parental rights will have no adverse effect on [Child] because [Mother] and [Child] do not have a relationship; [Child]'s parents are [Custodians.]"  Orphans' Court Opinion, 7/15/2024, at 9.  We note that this is irrelevant to a Section 2511(a)(1) analysis, as this section focuses on Mother's conduct and a child's bond with their parent is examined under Section 2511(b).  *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993); *see also Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023).

- 13 -

that Mother was incarcerated for virtually the entire six-month period preceding the petition, September of 2023 to March of 2024. The court found that she was reincarcerated to serve out the remainder of her sentence, and there was no evidence that Mother would be subject to continuing incarceration once her program is completed. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 13.

With respect to custody, Mother petitioned the custody court for partial physical custody while incarcerated in October of 2023, which was denied, and Mother was advised to "re-petition when she was released." *Id.* at ¶ 14; N.T., 6/3/2024, at 44-45, 53. The court found that Mother petitioned the court again for custody "when [she] was out of jail," but this is a mischaracterization of the testimony. *Id.* at ¶ 17. The testimony of Custodians and Mother show that the second custody filing was in February of 2024, when Mother was still incarcerated and one month prior to Custodians' March 2024 termination petition. *See* N.T., 6/3/2024, at 14, 25, 28, 40, 44-45, 53. Ultimately, the testimony reveals that Mother petitioned the court for partial physical custody of Child twice in the six months preceding the petition. *See id.*; Orphans' Court Opinion, 7/15/2024, at ¶¶ 14, 17.

Further, the court made a factual finding that Mother had been sober since June 12, 2023, which is well before the six-month period, and maintained her sobriety thereafter. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 18 (citing Mother's Exhibit A); N.T., 6/3/2024, at 38, 43, 47. The court

specifically found that Mother "requested placement at [her current treatment] facility because it is a place for women and children. She wants [Child] to stay with her there. . . . She intends to get a [General Education Development ("GED") diploma]. She wants to provide for [Child]." *Id.* at ¶¶ 18-19.

The court found that Mother made multiple phone calls to Custodians to "ask how [Child] was doing and asked to tell [Child] she loved her" while incarcerated. *Id.* at ¶ 16; N.T., 6/3/2024, at 8, 14, 25, 27, 36. The testimony revealed that the phone calls from prison cost money that Mother could not afford, and Custodians could not always finance. *See* N.T., 6/3/2024, at 14, 36. Mother testified that she began working in the prison close to the end of her incarceration period, earning 25 cents on hour, so she called when she could afford or when she had free calls. *See id.* at 36. The court also found that Mother sent several letters during her incarceration in the summer of 2023 and a birthday and Christmas card to Child in the winter of 2023. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 16.

Based on the foregoing sustainable facts, we conclude that the orphans' court abused its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(1). Indeed, the record does not demonstrate that Mother "evidenced a settled purpose of relinquishing parental claim" to Child. 23 Pa.C.S.A. § 2511(a)(1); *see also A.H.*, 247 A.3d at 443. Instead, the record establishes that Mother utilized the resources at her command while

incarcerated and exercised reasonable firmness in declining to yield to the obstacles that arose from her incarceration, most critically in the six-month period preceding the filing of the termination petition. ***See S.P.***, 47 A.3d at 828; ***see also*** 23 Pa.C.S.A. § 2511(a)(1). Thus, the orphans' court's conclusion of law which found that Section 2511(a)(1) was established by clear and convincing evidence was an abuse of discretion as it was manifestly unreasonable in light of the sustainable findings of fact.

We further note that the orphans' court's conclusion was entirely based on events that occurred between April and October of 2023, which was prior to the six months preceding the filing of the petition. ***See*** Orphans' Court Opinion, 7/15/2024, at 8-9. While the entire history of the case is relevant, this was in contravention to the law because the court **must** address the six-month period before the filing of the petition since it is the **most critical** period of time. ***See C.M.***, 255 A.3d at 364; ***see also L.A.K.***, 265 A.3d 580, 592. Instantly, that period fell between September of 2023 to March of 2024, and the court failed to address this period with any meaningful discussion by dismissing Mother's above-detailed efforts during this critical time. ***See id.***; ***see also C.M.***, 255 A.3d at 364, 367 ("It is crystal clear, and of vital importance in this case, that a parent's legal efforts to enforce custodial rights demonstrate affirmative performance of a positive parental duty."). Thus, the orphans' court further erred when it terminated Mother's parental rights under Section 2511(a)(1).

We now turn to Mother's second issue, wherein she argues that the court abused its discretion pursuant to Section 2511(a)(2). Under this subsection, the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **A.H.**, 247 A.3d at 443. Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." **Id**., citing **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010). In reviewing the orphans' court's findings pursuant to Section 2511(a)(2), we remain mindful that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." **Id.**

In this case, the orphans' court found that Mother's repeated incarcerations and rehabilitations had caused Child to be without Mother's essential parental care, control, and subsistence. **See** Orphans' Court Opinion, 7/15/2024, at 11-12. The court continued:

> Further, [Custodians] have proved by clear and convincing evidence that despite [Mother]'s compliance with some prison and rehab programs, the conditions and causes of her incapacity cannot be remedied. She has not had custody of [Child] for about [fourteen] months, since April [of] 2023. She has no relationship with her. [Child] has a parent-child bond with [Custodians] and considers them her parents. As of the June 2024 termination hearing, [Mother] was unemployed and did not know where she will live and work when she is discharged in October.

- 17 -

*Id.* at 12. Again, we must disagree.

Mother argues that her incapacities, namely her repeated incarcerations and rehabilitations, which caused Child to be without her parental care, control, and subsistence, can and will be remedied. *See* Mother's Brief at 13-15. Mother contends that she is no longer facing incarceration and her demonstrated commitment to sobriety show that her prior incapacities are "not permanent in nature as to justify termination" under this subsection. *Id.* at 14.

We conclude that the orphans' court's conclusions of law as to Section 2511(a)(2), in light of its sustainable findings of fact, are manifestly unreasonable. It is undisputed that Mother's incapacities in this case began as homelessness and developed into incarcerations and rehabilitations for her illegal substance use. The court made the following relevant factual findings, which are supported by the record:

> Mother is presently participating in a six-month inpatient drug and alcohol treatment program . . . in Washington, Pennsylvania. . . . Mother is doing very well in the program and submitted a letter from the facility. *See* Mother's Exhibit A. . . . She has been clean and sober since June 12, 2023. She goes to AA and NA meetings. At the end of June 2024 Mother could start employment.
> . . .
> Mother expects to be successfully discharged from [her treatment program] on October 19, 2024. She is trying to find out where she will live.

Orphans' Court Opinion, 7/15/2024, at ¶¶ 18-19 (cleaned up); N.T., 6/3/2024, at 38, 45; Mother's Exhibit A.

- 18 -

Based on the foregoing findings, the court's conclusion that Mother cannot or will not remedy her incapacities is manifestly unreasonable. To the extent that the court terminated Mother's parental rights because she has not had custody of Child since April of 2023, this does not speak to her ability to remedy her specific incapacities, especially when there was no evidence of continuing incarceration and the court specifically found that Mother had been sober for over a year at the time of its decision, citing her Exhibit A, which also states that Mother has had no indication of any relapse. *See L.A.K.*, 265 A.3d at 600 (finding that the father had achieved sobriety and remedied this incapacity when the record showed that he had been sober for almost two years without any relapses).

With respect to the court's reasoning under Section 2511(a)(2) that analyzed Child's bond, if any, with Mother as well as Child's bond with Custodians, these considerations are irrelevant to this analysis, as this section focuses on Mother's conduct and a child's bonds with their parents and pre-adoptive parents are examined under Section 2511(b). *See E.M.*, 620 A.2d at 485; *see also K.T.*, 296 A.3d at 1109.

Further, the court referred to Mother's unemployment and lack of definitive housing plans in its reasoning, but this is insufficient to show her inability to remedy her particular incapacities. The court specifically found that she was eligible for employment the same month as the termination hearing, wanted to pursue a GED to provide for Child, and Mother's treatment

facility would allow Child to reside with her immediately and until Mother finalized her post-program housing plans. *See* Orphans' Court Opinion, 7/15/2024, at ¶ 18, 19; N.T., 7/15/2024, at 37, 39, 45-46, 53.

The foregoing evidence does not support its conclusion that Mother cannot or will not remedy her incapacities. Therefore, the record evidence does not establish the third factor which Custodians must prove for termination under this subsection, specifically, that the causes of Mother's "incapacity, abuse, neglect or refusal cannot or will not be remedied." *A.H.*, 247 A.3d at 443. Thus, the orphans' court's conclusion of law which found that Section 2511(a)(2) was established by clear and convincing evidence was an abuse of discretion as it was manifestly unreasonable in light of the sustainable findings of fact. Our review of the record does not reveal any basis upon which we can affirm the termination of Mother's parental rights pursuant to Section 2511(a)(2). *See id.*

Based on this disposition, we need not address Mother's final issue which relates to Section 2511(b). *See In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) ("Only if the court determines that the parents conduct warrants termination of his or her parental rights [pursuant to Section 2511(a)] does the court engage in the second part of the analysis pursuant to Section 2511(b).").

For the foregoing reasons, we reverse the order terminating Mother's parental rights. We remand to the orphans' court for entry of an order denying

Custodians' petition to involuntarily terminate Mother's parental rights to Child.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/12/2025